UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

RICHARD DAVIS,

                                                               Plaintiff,

                  -against-

THE CITY OF NEW YORK, a municipal corporation; POLICE OFFICER HUGO HUGASIAN (Shield Number 10228), in his individual and official capacities; SERGEANT JOSEPH KLUBNICK (Shield Number 1997), in his individual and official capacities; POLICE OFFICER RAUL NAREA (Shield Number 7493); in his individual and official capacities,

                                                                 Defendants.
-----------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

15-CV-00476 (NGG) (VVP)

**JURY TRIAL DEMANDED**

     Plaintiff, Richard Davis, by his attorney, Steven E. Lynch, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

     1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitution of the Unites States.

## JURISDICTION

     2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

     3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

7. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9. At all times hereinafter mentioned, the individually named defendants, Police Officer Hugo Hugasian, Sergeant Joseph Klubnick and Police Officer Raul Narea, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New

York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On or about November 30, 2012, at approximately 7:00 p.m., plaintiff and his wife were shopping for school uniforms for their children in the vicinity of Fayette Street and Broadway in Brooklyn, New York.

14. While plaintiff's wife shopped, plaintiff went to a nearby business and purchased a money order.

15. After purchasing a money order, plaintiff walked towards the store where his wife was shopping when Police Officers believe to be Police Officer Raul Narea and Police Officer Hugo Hugasian stopped and frisked plaintiff. Police Officer Raul Narea and Police Officer Hugo Hugasian recovered no contraband from plaintiff.

16. Police Officer Raul Narea and Police Officer Hugo Hugasian conferred with Sergeant Joseph Klubnick, who claimed to see plaintiff sell DVDs and approved plaintiff's arrest.

17. Police Officer Raul Narea and Police Officer Hugo Hugasian arrested plaintiff, transported plaintiff to the 83rd Precinct, 480 Knickerbocker Ave, Brooklyn, NY 11237, and strip-searched plaintiff.

18. On or about December 1, 2012, plaintiff was charged with Penal Law section 165.71 trademark counterfeiting in the third degree, Penal Law section 275.35 failure to disclose

the origin of a recording in the second degree, and New York City Administrative Code section 20-453 unlicensed general vendor.

19. Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

20. As a result, the plaintiff's criminal case was dismissed and sealed.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

21. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

22. As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

23. Plaintiff was conscious of his confinement.

24. As a result of the foregoing, plaintiff's liberty was restricted in filthy and degrading conditions for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

25. By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiff under 42 U.S.C. §1983

### SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Illegal Strip Search in the 83rd Precinct*
(Against the Individual Officer Defendants)

26.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

27.     Police Officer Hugo Hugasian and Police Officer Raul Narea's strip search of plaintiff in the 83rd precinct was illegal because no police officer had reasonable suspicion to believe that the plaintiff was hiding illegal items under his clothes or had committed a crime.

28.     Moreover, at the time of plaintiff's strip search in the 83rd precinct, plaintiff had not been arraigned before a judge nor admitted to a correctional facility.

29.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

30.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

31.     The defendants who were present but did not actively participate in the unlawful actions alleged herein and who observed and had an opportunity to prevent such conduct and failed to intervene.

32.     By virtue of the foregoing, the defendants who failed to intervene deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983- Denial of the Right to a Fair Trial*
(Against the Individual Officer Defendants)

33.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

the preceding paragraphs with the same force and effect as if fully set forth herein.

34. The defendants created false evidence against the plaintiff and drafted or signed sworn criminal complaints and false police reports.

35. The defendants forwarded to prosecutors fabricated and false evidence that was likely to influence a jury's decision.

36. The defendants knowingly and intentionally provided false evidence against plaintiff in legal proceedings.

37. By virtue of the foregoing, the defendants deprived the plaintiff of his constitutional right to a fair trial and are liable to plaintiff under 42 U.S.C. §1983

### FOURTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

39. The City of New York and the New York City Police Department fail to scrutinize and hold accountable police officers who violate civil rights.

40. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

than $117 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3]

41.     The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

42.     Corporation Counsel previously defended Police Officer Raul Narea and Police Officer Hugo Hugasian from lawsuits alleging civil rights violations in the Eastern District of New York. Ramos v. City of New York et al, 14-cv-02373-PKC-VVP (pending claims of false arrest and excessive force); and Stevenson-Bey v. City of New York et al, 09-cv-05207-JBW-RER (settling for $75,000.00 allegations of excessive force).

43.     However, the City of New York has isolated NYPD officers like Police Officer Raul Narea and Police Officer Hugo Hugasian from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is

---

[2]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

[3] "Report: Number Of Lawsuits Against NYPD Hits Record High," http://newyork.cbslocal.com/2014/02/16/report-number-of-lawsuits-against-nypd-hits-record-high/, February 16, 2014 last visited on November 7, 2014.

preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[4] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

44. The 83rd precinct of the New York City Police Department has an extensive history of civil rights violations. According to the City Comptroller's Office fiscal year report for 2009, 66 Civilian Complaint Review Board complaints originated in the 83st precinct.[5] In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 83rd precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

45. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on November 7, 2014.

[5] "CCRB: Attribution of Complaints to Patrol Borough Brooklyn North 2005-2009," https://data.cityofnewyork.us/Public-Safety/CCRB-Attribution-of-Complaints-to-Patrol-Borough-B/zwt9-6u9n, lasted visited on November 7, 2014.

division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

46. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

47. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

48. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action.

This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

49. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

50. As a result of the foregoing, plaintiff Richard Davis is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      July 2, 2015

By: Steven E. Lynch
    /s/
Steven E. Lynch
Attorney for Plaintiff
The Law Offices of Steven E. Lynch
233 Fifth Avenue, Suite 4A
New York, New York 10016
(T) (718) 858-8737
(F) (718) 690-3593
steven@stevenelynch.com